[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 13, 2006
THOMAS K. KAHN
CLERK

No. 06-11412
Non-Argument Calendar
_____

D. C. Docket No. 05-00017-CR-WCO-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD PERRY MOON,
a.k.a. Runt,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(November 13, 2006)**

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Ronald Perry Moon appeals his convictions and life sentences for possession

with intent to distribute (1) more than 50 grams of crack, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(iii); (b) cocaine, in violation of 21 U.S.C. § 841(a) and (b)(1)(C); and (c) more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(viii). After a thorough review of the record, we affirm.

The testimony at trial was as follows: Artis Johnson agreed to cooperate with authorities investigating drug dealers after police found a large amount of drugs in his car. Although Johnson did not name Moon as a dealer, Johnson met with Moon in an attempt to arrange some drugs buys as part of his cooperation. Moon, a former drug addict, told Johnson he had been clean and sober for three years and was working as a painter. Johnson was looking for a good price on some cocaine deals, and Moon told Johnson he could help. Moon later delivered cocaine that Johnson bought for a man named Junior. Johnson cooked the cocaine, transforming it to crack. Moon was curious about the process and asked Johnson for a piece, which Johnson gave him. Junior later gave Johnson $10,500 to buy half a kilogram of cocaine. Johnson called Moon because Moon had the connection for the buy. Moon told Johnson his contact for drugs was a man named Twan, but the deal never went through. Moon later spoke with Johnson to find a methamphetamine dealer because Moon had arranged a deal to sell

2

methamphetamine to an undercover DEA agent identified as "Dave."

Moon was arrested and questioned, admitting that he sold methamphetamine, crack, and cocaine to Dave. Moon told agents that he obtained the crack and coke from Twan and the methamphetamine from Quincy Strickland. The total amount of drugs Moon sold to Dave was: 122.5 grams of crack, 127.7 grams of cocaine, and 84.2 grams of methamphetamine. Moon further admitted planning to sell five kilograms of cocaine for Twan, and he agreed to cooperate with agents by contacting Twan. Despite Moon's attempts, however, he was unsuccessful in reaching Twan.

At the close of the government's case, defense counsel moved for judgment of acquittal, asserting that the government had not established the type of drugs involved. The court denied the motion.

Moon presented testimony from his wife and his drug treatment program leader, both of whom confirmed that Moon was a drug addict who had undergone rehabilitation several times, but had relapsed each time. Moon's wife stated that she knew Moon was using drugs when he was arrested, and she explained that selling drugs was a means for an addict to feed his habit.

Moon testified that he had been using drugs since 1982 and had gone to rehabilitation several times. At the time of the offenses, he had been clean for

3

three years until Johnson visited him and gave him crack. Moon did not plan on getting involved with drugs again, but Johnson showed him a piece of crack and, as an addict, Moon could not resist. Moon went back to rehabilitation, but after his release, Moon agreed to meet with Johnson to discuss a painting job. When Moon arrived at Johnson's house, Johnson offered Moon some crack, and Moon got hooked again. Moon denied offering to sell drugs for Johnson; he stated that Johnson initiated the deals.

Moon stated that he was on drugs when he sold to Dave, and that he only participated in the deals to feed his habit. He further stated that he told the agents that he was high when they questioned him after his arrest, and he could not remember what he told the agents at the time. According to Moon, he did not intend to deal drugs, but Dave and Johnson continued to call him to arrange deals. He accused the government and Johnson of entrapping him.

Moon rested his case, and the government called one rebuttal witness to contradict Moon's allegation that he informed agents he was high during questioning. Defense counsel renewed the motion for judgment of acquittal, arguing that it had put forth an entrapment defense and the government had not met its burden to show that Moon was predisposed to commit the offense. The court denied the motion.

The court instructed the jury on the entrapment defense, explaining that there is no entrapment defense where the defendant is ready and willing to commit the offense and the government simply presents the opportunity to do so. The court further instructed that the defense was proper where there is reasonable doubt that the defendant intended to commit the crimes without the inducement or persuasion of the undercover officer or cooperating individual. The jury convicted Moon of all three counts, finding that the amount of drugs exceeded 50 grams of crack and 50 grams of methamphetamine.

The probation officer prepared a presentence investigation report ("PSI"), calculating a guidelines range of 360 months to life imprisonment; however, under 21 U.S.C. § 841(b) and § 851, there was a mandatory term of life imprisonment. The guidelines also listed the fine range as $20,000 to $8,000,000. The probation officer noted that Moon owed back child support for his seven children, of whom three were under the age of sixteen. The probation officer found that Moon had no reported assets and would be unable to pay a fine within the guidelines range, but could pay a fine under the Bureau of Prisons Financial Responsibility Program. Moon objected to the imposition of a fine.

The court sentenced Moon to life imprisonment on each count, to run concurrently. The court determined that Moon did not have the ability to pay the

5

fine under the guidelines range, but that he could pay a $2,000 fine under the Bureau of Prisons Financial Responsibility Program at whatever rate the program set. Moon renewed his objection to the fine.

Moon now appeals, challenging (1) whether he presented sufficient evidence of his entrapment defense, and (2) the imposition of a fine.[1]

A. Entrapment

Moon argues that the government used his drug addiction to entrap him, that there was no evidence he was predisposed to commit the offenses, and the only evidence the government presented were his prior convictions.

Because entrapment is generally a jury question, review of an entrapment claim is, as a matter of law, a sufficiency of the evidence inquiry. United States v. Brown, 43 F.3d 618, 622 (11th Cir. 1995). We review a jury's rejection of an entrapment defense de novo, viewing all of the evidence and inferences in favor of the government.[2] United States v. Francis, 131 F.3d 1452, 1456 (11th Cir. 1997).

---

[1] Moon also challenges his life sentences as cruel and unusual punishment and the enhancement under 21 U.S.C. § 851. Because this court has rejected these arguments, we do not discuss these issues further. See United States v. Willis, 956 F.2d 248, 250 (11th Cir. 1992) (upholding mandatory life sentence under § 841 and the enhancement provisions in § 851); see also United States v. Raad, 406 F.3d 1322, 1324 (11th Cir. 2005) (recognizing Willis's holding); United States v. Wade, 458 F.3d 1273, 1278 (11th Cir. 2006) (upholding enhancement based on prior convictions); United States v. Dowd, 451 F.3d 1244 (11th Cir. 2006); United States v. Martinez, 434 F.3d 1318 (11th Cir. 2006); United States v. Taylor, 417 F.3d 1176 (11th Cir. 2005).

[2] We disagree with the government's assertion that Moon abandoned the argument by failing to raise it in his motion for judgment of acquittal at the close of the government's case-in-chief. Although Moon did not raise it at that time, he did raise it when he renewed his motion at the close

"[T]he fact-intensive nature of the entrapment defense often makes jury consideration of demeanor and credibility evidence a pivotal factor." United States v. Miller, 71 F.3d 813, 816 (11th Cir.1996). We cannot overturn the jury's verdict if there is any reasonable construction of the evidence that would allow the jury to have found the defendant guilty beyond a reasonable doubt. Francis, 131 F.3d at 1456.

"In this circuit, a successful entrapment defense consists of two elements: 1) government inducement of the crime, and 2) lack of predisposition on the part of the defendant." United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002) (quoting United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995)). If a jury rejects a defendant's claim that he was entrapped, our review is limited to determining whether the government presented sufficient evidence to the jury for it reasonably to have concluded that the defendant was predisposed to take part in the crime. Francis, 131 F.3d at 1456. The predisposition inquiry is a purely subjective one, requiring the jury to "consider the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's officers or agents." Brown, 43 F.3d at 624.

Although there is no specific list of the factors that establish predisposition,

---

of all the evidence. Therefore, he preserved the issue. United States v. Rahim, 431 F.3d 753, 756 (11th Cir. 2005); United States v. Bichsel, 156 F.3d 1148, 1150 (11th Cir. 1998).

this court has articulated several principles to guide the analysis: the defendant's readiness or eagerness to participate; post-crime statements; and the opportunity to back out of the deal and the refusal to do so. Brown, 43 F.3d at 625.

Viewing the evidence in the light most favorable to the government, we conclude that the evidence supports the jury's determination that Moon was predisposed to commit the crimes. First, Moon had prior convictions for drug-related crimes. Second, Moon's wife testified that addicts often sold drugs to feed their habits. Third, the government's witnesses testified that Moon was a willing participant and that he contacted the undercover agent to negotiate the deals. Moreover, Johnson was not involved in the methamphetamine deal, and Moon initiated that deal with Dave absent any alleged coercion. Although Moon denied this evidence, by testifying, he ran the risk that the jury would disbelieve his testimony. United States v. Rudisill, 187 F.3d 1260, 1268 (11th Cir. 1999).

Therefore, there was sufficient evidence for the jury to conclude that Moon was predisposed to commit the offenses. Francis, 131 F.3d at 1456.

B. Fine

Moon argues that the court abused its discretion by imposing a fine without considering his ability to pay, as required under U.S.S.G. § 5E1.2(a). Moon notes that the court did not explain its reasoning for imposing a fine, and the record does

not reflect the factors the court considered.

We review a district court's determination that the defendant is able to pay the fine for clear error. United States v. McGuinness, 451 F.3d 1302, 1307 (11th Cir. 2006); United States v. Singh, 335 F.3d 1321, 1323 n.1 (11th Cir. 2003). Under U.S.S.G. § 5E1.2, "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine" "even with the use of a reasonable installment schedule." U.S.S.G. § 5E1.2(a) & (e)(1). Moon has the burden of proving inability to pay. McGuinness, 451 F.3d at 1307; United States v. Hernandez, 160 F.3d 661, 665 (11th Cir. 1998).

Here, the district court found that Moon would not be able to pay a fine under the guidelines range, but that he was able to pay a fine under the Financial Responsibility Program. In reaching this conclusion, the court adopted the PSI's factual findings but made no other factual findings.

The sentencing court is not required to make specific findings of fact with respect to the Sentencing Guideline factors as long as "'the record reflect[s] the district court's consideration of the pertinent factors prior to imposing the fine.'" United States v. Lombardo, 35 F.3d 526, 530 (11th Cir.1994). These factors include: the defendant's income; earning capacity; financial resources; the burden

9

on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; the need to deprive the defendant of illegal gains; and the need to promote respect for the law, provide just punishment, and adequate deterrence. U.S.S.G. § 5E1.2(d).

In this case, the court reviewed and adopted the PSI, which indicated that Moon's previous convictions involved fines, that he owed child support, that there was no restitution or illegal gains from the offenses, and that he had been employed as a house painter for several years prior to the instant arrest. Consideration of the PSI may be sufficient to show that the court considered the necessary factors. United States v. Kahwaji, 118 F.3d 1454, 1459 (11th Cir. 1997). Moon has offered nothing to show his inability to pay other than the fact of his incarceration.

For the foregoing reasons, we AFFIRM.