**UNITED STATES of America,**
**Plaintiff,**

**v.**

**ONE 2007 TOYOTA FJ CRUISER, VIN JTEBU11F670023522, Defendant.**

**Civil Action No. 4:10–CV–0170–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

Nov. 8, 2011.

George Jeffrey Viscomi, U.S. Attorneys Office, Atlanta, GA, for Plaintiff.

McNeill Stokes, Office of McNeill Stokes, Atlanta, GA, for Defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on the Government's Motion for Summary Judgment [14].

## I. Background

### A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir.2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir.2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

Special Agent K. Hillman ("Agent Hillman") is a Special Agent with the Department of Justice, Federal Bureau of Investigation ("FBI") located in Dalton, Georgia, and has been employed in that position for twelve years. (Gov't's Statement of Material Facts ("GSMF") ¶ 1; Claimant's Resp. GSMF ("CRGSMF") ¶ 1.) On June 9, 2010, at approximately 5:54 p.m., Detective C. Lyons ("Detective Lyons") of the Catoosa County, Georgia Sheriff's Office ("CCSO") posted an ad in the personal section of the Craigslist website. (GSMF ¶ 2; CRGSMF ¶ 2.) According to the Government, Detective Lyons placed the ad with the intention of apprehending parties who intended to violate Federal and State laws by engaging in sexual activities with minors. (Decl. of K. Hillman ¶ 3.)[1]

At approximately 7:33 p.m. on June 9, 2010, Detective Lyons received a reply to the personal ad from a party who was later identified as Emanuel Lopez ("Claimant"), from the e-mail address latin.love69@live.com. (GSMF ¶ 4; CRGSMF ¶ 4.) Claimant resided at 846 Clay Street, Cookeville, Putnam County, Tennessee 38501. (GSMF ¶ 5; CRGSMF ¶ 5.)

At approximately 12:43 p.m. on June 10, 2010, Detective Lyons sent a reply to Claimant from the e-mail address sweet.sara.2016@gmail.com, purporting to be a girl named Sara. (GSMF ¶ 6; CRGSMF ¶ 6.) In the June 10, 2010 e-mail reply, Detective Lyons stated that Sara was only fourteen years old. (GSMF ¶ 7; CRGSMF ¶ 7.)

An e-mail exchange between Sara and Claimant followed, and, from June 10, 2010 to June 18, 2010, Sara and Claimant exchanged approximately fifty-three e-mails. (GSMF ¶ 8; CRGSMF ¶ 8.) On June 16, 2010, Claimant sent Sara several e-mails detailing, in an explicit nature, the sexual acts that he would perform on Sara when they met. (Gov't Ex. 2.) Because Claimant contends that he was "entrapped" and "baited" into sending those e-mails, the Court includes the relevant portions of the e-mails exchanged below.

---

**1.** Claimant denied this proposed fact. (CRGSMF ¶ 3.) Claimant's denial, however, is improper because Claimant failed to cite to any evidence in the record to support the denial. N.D. Ga. R. 56.1B(2)a.(2) ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of a movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).").

Specifically, at approximately 6:39 p.m. on June 16, 2010, Claimant sent Sara the following e-mail:

> Hey baby whats going on? Well I'm just sitting here at home. Wondering how come you don't write or text or call. Did I do something? Baby I miss talking to you, you are the sweetest person I know. Please write, I wanna see you.

(Gov't Ex. 2 at 15.) At approximately 10:29 p.m. on that same day, Sara sent an e-mail response that stated: "u want 2 c me? ... i thought u were just n 2 cyber? ? ?" (*Id.*) At approximately 10:32 p.m. on that same day, Claimant responded: "Well, no. I would love to see you sometime. I mean, talking here is nice, but it even [sic] better if we could hang out a little." (*Id.*) At approximately 10:52 p.m. on that same day, Sara sent Claimant an e-mail that stated: "[I] like a man who is confident & knows what he wants ... what u want 2 do if we meet ..." (*Id.*) At approximately 11:04 p.m. on that same day, Claimant sent an e-mail to Sara that stated:

> well what do I want? its simple I want to meet you and talk to you and know about you. sweety, i believe you are the sweetest person and i know you are real. but you know, because of your age i have to be careful. i mean i could get in trouble not for talking to you, but if someone thought i wanted to do something with you, you know. which is totally not true. i mean i find you very attractive and sweet, and you totally melt my heart. but i would love to just be with you, and get to know you. So what would we do? why don't we start by going out? how 'bout ice cream, its the perfect time, its hot outside. then we can talk, maybe go for a walk? movies? i don't think movies is the best place to

go, i really wanna talk you know and you can't do that at the movies. i would like to caress you a little, a hug, perhaps hold your hand, and just be with you. its totally awesome to have someone to share an emotional connection with, its like magic, its sweet. and don't worry, i believe i am a very confident person, but why don't you find out for your self;).

(*Id.* at 15–16.)

At approximately 11:10 p.m. on June 16, 2010, Sara sent an e-mail to Claimant stating: "whatever... i thought u would treat me lik a woman nt a kid ... just move on u r just talking ... dont need cyber ..." (Gov't Ex. 2 at 16.) At approximately 11:21 p.m. on that same day, Sara sent another e-mail to Claimant, which stated: "no reply thout so ... im going 2 bed///." (*Id.*)

At approximately 11:22 p.m. on June 16, 2010, Claimant sent Sara an e-mail that stated:

> baby, wanna be treated like a woman for real? great, i'll treat you like a women. when is your grandma gone? i'll come, you wait for me in your bedroom, in the sexiest outfit you have. i wanna start by kissing you, and caressing you. i want to feel your smooth skin in my hands ... no wait, don't go yet.

(Gov't Ex. 2 at 17.) At approximately 11:24 p.m. on that same day, Sara responded: "k ... keep going ill give u 2 mins ..." (*Id.* at 18.) At approximately 11:34 p.m. on that same day, Claimant sent Sara the following e-mail:

> ok ... well i'm kissing you in those soft lips of yours. you start grabbing your nipples, you press them hard and you caress your breasts. i'm moving now to your neck i press my lips and i use my tongue, while my hand goes down on the

outside of your things. ok i'm beggining to feel butterflies go nuts, lol. so anyway, I wanna go slow so i go up and replace your hands with mine. but i don't wanna feel your clothes, i wanna feel your nipples skin to skin. i make sure their hard and ready. Now i go down even lower, and i take your right nipple in my mouth. my soft tongue wet and warm is now with your nice soft pink delicate nipple. now open your legs a little, because my right hand wants to explore you. it goes down to that delicate little triangle, and i now feel the moist, the wetness, and your clit swelling....

(*Id.*) At approximately 11:34 p.m. on that same day, Sara responded: "im outa here ..." (*Id.*) At approximately 11:41 p.m. on that same day, however, Sara sent Claimant an e-mail that stated: "wow ... im going 2 think bout that all NITE ... when can we hook up maybe 2morrow ... hit me back im ging 2 bed b4 my grandma wakes up ... tell me everything else and when i wont 2 wake up w a smile ..." (*Id.* at 18–19.)

At approximately 11:44 p.m. on June 16, 2010, Claimant sent Sara an e-mail that stated; "great, i will finish it later, we can hook up whenever baby, i just need to know whats the best day and time. but hey, i wanna see another picture of yours, and i wanna talk to you on the phone beforehand." (Gov't Ex. 2 at 19.) At approximately 11:50 p.m. on that same day, Claimant sent Sara an e-mail stating:

ok so i rip your panties and throw them away. I love you and i would never hurt you, but this will hurt a little. i go down to your pussy and start eating it. i use my tongue to taste that sweet nectar juice of yours. i also use my fingers, and i hear you moan ... you begin to feel

something building deep inside you, and its quickly buidling up. and as i go faster and faster and faster, i hear you cry in pleasere as you cumm and squirt and i feel your jiuces come out. wow it is so hot hearing you cry and watching your juices come out of your pussy.

(*Id.* at 19.)

On June 17, 2010, Claimant and a female officer from the CCSO, who purported to be Sara, engaged in a telephone conversation. (GSMF ¶ 10; CRGSMF ¶ 10.) During that telephone conversation, Claimant arranged to meet Sara on the following day, June 18, 2010, at a park near Sara's house, and then proceed to Sara's house. (GSMF ¶ 11; CRGSMF ¶ 11.)

On June 18, 2010, Claimant and a female officer from the CCSO, who purported to be Sara, engaged in another telephone conversation. (GSMF ¶ 12; CRGSMF ¶ 12.) During the June 18, 2010 telephone conversation, Claimant agreed to meet Sara at Pleasant Valley Baptist Church, located at 1995 Ooltewah Ringgold Road, Ringgold, Catoosa County, Georgia 30736. (GSMF ¶ 13; CRGSMF ¶ 13.)

At approximately 2:58 p.m. on June 18, 2010, a maroon Toyota FJ Cruiser, VIN JTEBU11F670023522, (the "Defendant Vehicle"), with Tennessee license plate 979 XCB, pulled into the parking lot of the Pleasant Valley Baptist Church. (GSMF ¶ 14; CRGSMF ¶ 14.) A traffic stop was conducted on the Defendant Vehicle, and its driver was identified as Claimant. (GSMF ¶ 15; CRGSMF ¶ 15.)

Law enforcement officers arrested Claimant. (Hillman Decl. ¶ 16.) An inventory of the Defendant Vehicle uncovered the following, among other things: three Lifestyles condoms of assorted colors; one Lifestyles ultrasensitive condom, and one

package of KY Yours and Mine personal lubricant. (*Id.*)[2]

Law enforcement officers interviewed Claimant following his arrest, and Claimant knowingly and voluntarily waived his Miranda rights. (GSMF ¶ 17; CRGSMF ¶ 17.) During his interview, Claimant acknowledged trading e-mails over the Internet with an individual purporting to be Sara. (GSMF ¶ 18; CRGSMF ¶ 18.) During his interview, Claimant stated that Sara told him she was fourteen years old, and, in response to questioning, Claimant stated that it never crossed his mind that Sara was not fourteen, and that no one made Claimant do something he did not want to do. (Hillman Decl. ¶ 19; Gov't Ex. 3.)

During his interview, Claimant stated that he lived in Cookeville, Tennessee, and that he had driven several hours to reach the Pleasant Valley Baptist Church in Ringgold, Georgia. (GSMF ¶ 20; CRGSMF ¶ 20.) Claimant acknowledged during his interview that he came to meet Sara prepared for sex. (GSMF ¶ 21; CRGSMF ¶ 21.) During his interview, Claimant stated that, if Sara had been real and if Claimant had not been arrested, Claimant would have had sex with Sara. (Hillman Decl. ¶ 22; Gov't Ex. 3.)

On March 30, 2011, a jury sitting in the Superior Court of Catoosa County, Georgia found Claimant guilty on charges of violating O.C.G.A. § 16–12–100.2(d), Computer Pornography, and O.C.G.A. § 16–4–1, Attempt to Commit Aggravated Child Molestation. (Gov't Ex. 4.) Claimant contends that a motion for new trial remains pending in that case, and notes that he plans to appeal if the Catoosa County Superior Court denies his motion for new trial. (CRGSMF ¶ 23.)

### B. Procedural Background

On October 7, 2010, the Government filed this lawsuit. (Docket Entry No. 1.) The Government alleged that the Defendant Vehicle was subject to forfeiture under 18 U.S.C. § 2428 as property used or intended to be used to commit, or to facilitate the commission of, a violation of 18 U.S.C. § 2423, traveling in interstate commerce for the purpose of engaging in illicit sexual conduct. (Compl. ¶ 15.)

On July 15, 2011, the Government filed its Motion for Summary Judgment, arguing that the Defendant Vehicle must be forfeited to the Government. The briefing process for the Motion for Summary Judgment is complete, and the Court finds that the Motion is ripe for resolution by the Court.

### II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled

---

2. Claimant contends that the search and seizure were illegal. (CRGSMF ¶ 16.) The Government correctly points out that any attempt by Claimant to raise a Fourth Amendment challenge is untimely. N.D. Ga. R. 7.1A(2) ("Specific filing times for some motions are set forth below. All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior permission of the court to file later."). Because the deadline for filing a motion to suppress is not listed in Local Rule 7.2, any motion to suppress was due thirty days after the close of discovery. N.D. Ga. R. 7.2. Here, Claimant never filed a motion to suppress, and he cannot now assert a Fourth Amendment challenge to the search and seizure. In any event, the evidence in the record fails to indicate that the search and seizure violated the Fourth Amendment.

to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir.2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir.2007). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Allen*, 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir.2007). The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir.2008) (quoting *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. *Reese*, 527 F.3d at 1271; *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir.2007). Finally, the Court does not make factual determinations. *In re Celotex Corp.*, 487 F.3d at 1328.

■ The standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant issue. As the United States Court of Appeals for the Sixth Circuit has noted:

> "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting William W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.' " *Franklin v. Montgomery County, Md.*, No. DKC 2005–0489, 2006 WL 2632298, at *5 (D.Md. Sept. 13, 2006) (quoting *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir.1999)) (alteration in original).

## III. Discussion

### A. Forfeiture Standards and Application to This Case

■ 18 U.S.C. § 2428(b) provides:

(1) **In general.**—The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(A) Any property, real or personal, used or intended to be used to commit or to facilitate the commission of any violation of this chapter.

(B) Any property, real or personal, that constitutes or is derived from

proceeds traceable to any violation of this chapter.

(2) **Applicability of chapter 46.**—The provisions of chapter 46 of this title relating to civil forfeitures shall apply to any seizure or civil forfeiture under this subsection.

18 U.S.C.A. § 2428(b). 18 U.S.C. § 2423(b) makes travel with intent to engage in illicit sexual conduct illegal, and states, in relevant part: "A person who travels in interstate commerce ... for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both." 18 .U.S.C. § 2423(b). The Civil Asset Forfeiture Reform Act ("CAFRA") of 2000, in turn, provides for civil forfeiture of property "used to commit or facilitate the commission of a criminal offense" where the Government establishes "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). The Government bears the burden of proving that substantial connection by a preponderance of the evidence. *United States v. 2001 Lexus LS430*, 799 F.Supp.2d 599, 601–02 (E.D.Va.2010).

■ To satisfy its burden, "[t]he government 'may use both circumstantial evidence and hearsay,' and the district court should evaluate the evidence presented with 'a common sense view to the realities of normal life.'" *United States v. $291,828.00 in United States Currency*, 536 F.3d 1234, 1237 (11th Cir.2008) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1440 (11th Cir.1991)). The Government also "may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C. § 983(c)(2). "The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden." *United States v. $67,220.00 in United States Currency*, 957 F.2d 280, 284 (6th Cir.1992).

■ Here, the Defendant Vehicle is subject to forfeiture if it was "used or intended to be used to commit or to facilitate" the interstate travel of a party with the intent to engage in illicit sexual conduct. 18 U.S.C. §§ 2428, 2423. The Government must prove, by a preponderance of the evidence, that a substantial connection existed between the Defendant Vehicle and Claimant's offense. 18 U.S.C. § 983(c)(3).

■ A vehicle has a substantial connection to illegal activity where the vehicle is used to transport an individual to the place where the illegal activity is intended to occur. *United States v. $1,761 in United States Currency*, No. 3:09–cv–814–J–34JRK, 2011 WL 4552354, at *10 (M.D.Fla. Sept. 30, 2011); *see also 2001 Lexus LS430*, 799 F.Supp.2d at 607–08 (concluding that vehicle used to transport minor across state lines for purposes of illicit sexual activity was substantially connected to criminal offense). Here, Claimant used the Defendant Vehicle to drive from Cookeville, Tennessee to Ringgold, Georgia, for purposes of engaging in illicit sexual activity, in violation of 18 U.S.C. § 2423(b). Under those circumstances, the Government has established, as a matter of law, that the Defendant Vehicle had a substantial connection to the illicit sexual activity. *See 2001 Lexus LS430*, 799 F.Supp.2d at 607–08 (finding vehicle used to transport minor across state lines for purposes of illicit sexual activity had substantial connection to that offense); *see also United States v. One 1977 Cadillac Coupe DeVille*, 644 F.2d 500, 503 (5th Cir.

1981) (concluding that vehicle used to transport individual to scene of drug transaction was subject to forfeiture).[3] The Defendant Vehicle thus ordinarily would be subject to forfeiture.

## B. Defendant's Defenses

Defendant has raised a number of defenses in response to the Government's Motion for Summary Judgment. The Court addresses those defenses in turn.

### 1. Entrapment

■ Claimant first argues that law enforcement illegally solicited and entrapped him. As an initial matter, Claimant's entrapment defense must proceed under federal law, not Georgia law, because the cause of action arises under federal law.[4] *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir.2006) ("The federal law of affirmative defenses governs the enforcement of causes of action created by federal statutes."); *Thurber v. W. Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1108 (9th Cir.1976) ("Where federal statutes determine rights and liabilities, the federal common law, rather than state law, is controlling with respect to whether the defense of estoppel is available.").

■ Under federal law, the affirmative defense of entrapment "applies when a person not predisposed to commit a crime is induced to do so by the government." *United States v. Sistrunk*, 622 F.3d 1328, 1332 (11th Cir.2010). "An affirmative de-

fense of entrapment 'requires two elements: (1) government inducement of the crime; and (2) lack of pre-disposition on the part of the defendant.'" *Id.* at 1333 (quoting *United States v. Brown*, 43 F.3d 618, 623 (11th Cir.1995)). "The defendant's right to present the entrapment 'defense is conditional, since before an entrapment defense may be presented to the jury, an evidentiary foundation for a valid entrapment defense must be present.'" *Id.* (quoting *United States v. Ryan*, 289 F.3d 1339, 1343 (11th Cir.2002)). "'[I]n laying an evidentiary foundation for entrapment, the defendant bears the initial burden of production as to government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.'" *Id.* (quoting *Ryan*, 289 F.3d at 1343).

■ To meet his burden, a defendant may produce "any evidence sufficient to raise a jury issue 'that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.'" *Sistrunk*, 622 F.3d at 1333 (quoting *United States v. Brown*, 43 F.3d 618, 623 (11th Cir.1995)). "[E]vidence of the government's mere suggestion of a crime or initiation of contact is not enough. Instead, government inducement requires an element of persuasion or mild coercion." *Id.* (quoting *Brown*, 43 F.3d at 623). "'[I]nducement consists of *opportunity plus something like excessive pressure or ma-*

---

**3.** Opinions of the United States Court of Appeals for the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the United States Court of Appeals for the Eleventh Circuit, are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir.1981) (en banc).

**4.** As the transcript of Claimant's state criminal trial reveals, the jury rejected Claimant's entrapment defense arising under Georgia law. Claimant cannot now re-litigate that issue in this proceeding.

*nipulation of a non-criminal motive.'* " *Id.* (quoting *Brown*, 43 F.3d at 623) (emphasis in original).

 "Evidence of 'persuasion or mild coercion' may be shown by evidence that the defendant 'had not favorably received the government plan, and the government had to push it on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate.' " *Sistrunk*, 622 F.3d at 1333 (quoting *Ryan*, 289 F.3d at 1344) (internal quotation marks omitted). "To raise an entrapment defense, 'a defendant must prove more than that the government first solicited him or merely provided the opportunity for the crime.' " *Id.* (quoting *United States v. West*, 898 F.2d 1493, 1502 (11th Cir.1990)). "Some of the inducement factors relevant to enticement of a minor to engage in a sexual activity include: 'whether the government made the initial contact; ... whether the government introduced the topics of sex and meeting in person; and the extent to which the government influenced [the defendant's] behavior by portraying [minors] as sexually precocious teenagers.' " *United States v. Young*, 613 F.3d 735, 747 (8th Cir.2010) (quoting *United States v. Myers*, 575 F.3d 801, 806 (8th Cir.2009)) (alterations and omissions in original).

 Here, the evidence, even viewed in the light most favorable to Claimant, is insufficient to entitle Claimant to raise the affirmative defense of entrapment. Claim- ant contacted Sara through an online forum, and initiated that contact. After a three-day lapse when Sara did not communicate with Claimant, Claimant re-initiated contact with Sara. Claimant introduced sexual topics into the dialogue between himself and Sara, and brought up the idea of meeting in person. Under those circumstances, Claimant simply cannot show that the Government induced him into committing the crime. *See Young*, 613 F.3d at 747 (concluding that government did not induce defendant to commit crime of enticing minor where defendant initially contacted fictitious minor, and defendant initiated majority of sexual discussions, including topic of in-person sexual encounter; although fictitious minor pretended to be receptive to defendant's sexual suggestions, government did not implant criminal design in defendant's mind and did not threaten, coerce, or psychologically manipulate defendant).[5]

 Alternatively, the Court concludes that the evidence in the record, even viewed in the light most favorable to Claimant, shows that Claimant was predisposed to commit the crime. "The predisposition inquiry is a purely subjective one," and requires consideration of " 'the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's officers or agents.' " *United States v. Moon*, 205 Fed.Appx. 782, 785 (11th Cir.2006) (per curiam) (quoting *United States v. Brown*, 43 F.3d 618, 624 (11th Cir.1995)). "Although there is no specific list of the factors that establish

---

5. Claimant also argues, in summary fashion, that the search of the Defendant Vehicle was illegal. To the extent that Claimant contends that the search was improper based on alleged entrapment, this Court previously has found that alleged entrapment arguments are irrelevant to determining whether a search was legal. *United States v. Donaldson*, No. 4:10–CR–047–HLM, Docket Entry No. 38, 2011 WL 1597685 (N.D.Ga. Apr. 26, 2011) (unpublished). Additionally, as discussed *supra*, any Fourth Amendment challenge is untimely.

predisposition, [the Eleventh Circuit] has articulated several principles to guide the analysis: the defendant's readiness or eagerness to participate; post-crime statements; and the opportunity to back out of the deal and the refusal to do so." *Id.* (citing *Brown*, 43 F.3d at 625). "[T]he ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson v. United States*, 503 U.S. 540, 550, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

Here, the evidence, even viewed in the light most favorable to Claimant, indicates that, during a three-day period, Sara did not communicate with Claimant. Claimant thus had an opportunity to "back out" of the situation. Instead, Claimant re-initiated contact with Sara, encouraging her to write and indicating that he wanted to see her. When Claimant talked about wanting to hold hands and eat ice cream together, and Sara responded that Claimant was just posturing, Claimant sent Sara an e-mail stating, "baby, wanna be treated like a woman for real? great, i'll treat you like a wom[a]n." Claimant then described, in explicit detail, sexual acts that he would like to perform on Sara. As the Government points out, Claimant's readiness to engage in sexual activity with Sara is readily apparent from the string of sexually explicit e-mails that Claimant sent to Sara. Under those circumstances, Claimant was predisposed to commit the crime. *See United States v. Leightey*, 432 Fed. Appx. 836, 840–41 (11th Cir.2011) (per curiam) (concluding defendant predisposed to commit crime where government did not entice or persuade defendant and defendant persisted in pursuit of crime).[6]

For the reasons discussed above, no genuine dispute remains with respect to the affirmative defense of entrapment. Claimant therefore cannot avoid summary judgment based on his entrapment argument.

### 2. Finality of Claimant's Criminal Conviction

■ Additionally, Claimant argues that forfeiture is premature because his state court action is not a final conviction. This argument is misplaced, because the Government need only prove that the Defendant Vehicle had a substantial connection to illegal activity, not that Claimant has been convicted of illegal activity. Further, this action is not predicated on the state court action, and it could have proceeded independent of a state prosecution. The status of Claimant's state criminal case

---

**6.** As the Government also correctly points out, the transcript of Claimant's state criminal trial contains testimony from an expert witness that Claimant presented. Claimant, however, failed to comply with any of the provisions of Federal Rule of Civil Procedure 26(a) concerning expert witness disclosures, and he also failed to comply with Local Rule 26.2C's requirements concerning disclosure of expert witnesses. *See* Fed.R.Civ.P. 26(a)(2) (setting forth expert witness disclosure requirements); N.D. Ga. R. 26.2C ("Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert, and, if desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery."). Claimant has not shown a substantial justification for his failure to disclose the expert witness, and Claimant thus cannot present the expert's testimony in this case. N.D. Ga. R. 26.2C ("Any party who does not comply with the [expert disclosure requirements] shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.").

therefore is not relevant to the instant Motion. In any event, the evidence in the record, even viewed in the light most favorable to Claimant, requires a finding that the Defendant Vehicle had a substantial connection to illegal activity. The Court consequently rejects this argument.[7]

### 3. Fictitious Victim

Claimant also argues, in passing, that "it was impossible for any offense to be committed because there was only an alleged fictitious victim." (Claimant's Br. Resp. Gov't Mot. Summ. J. at 15–16.) The United States Court of Appeals for the Eleventh Circuit has held, however, that "convictions for attempted enticement under 18 U.S.C. § 2422(b) and for travel in interstate commerce with intent to engage in a sexual act with a minor in violation of 18 U.S.C. § 2423(b) do not require the existence of an actual minor victim." *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir.2010) (citing *United States v. Root*, 296 F.3d 1222, 1227–32 (11th Cir.2002)). Claimant therefore cannot avoid summary judgment based on this argument.

### 4. Alleged Discrimination

Finally, Claimant insinuates that the Government's decision to pursue forfeiture in this case was discriminatory. According to Claimant, the Government chose to pursue a civil forfeiture action as to the Defendant Vehicle only because the Defendant Vehicle is valuable, and, in an "almost identical" case, the Government seized a defendant's vehicle, but later returned it to its owner. (Claimant's Br. Resp. Mot. Summ. J. at 4.) The Government, however,

points out that, in the other case, "postseizure investigation revealed that the party had not traveled across state lines prior to his arrest," and that, under those circumstances, the party had not violated federal law, and the vehicle was not subject to forfeiture. (Gov't Reply Br. Supp. Mot. Summ. J. at 12.) Under those circumstances, Claimant simply cannot create a genuine dispute concerning any alleged discriminatory motive on the part of the Government.

### 5. Summary

In sum, none of Claimant's arguments or defenses permit Claimant to avoid forfeiture of the Defendant Vehicle. On the contrary, no genuine dispute remains as to whether the Defendant Vehicle is subject to forfeiture to the Government. The Court therefore grants the Government's Motion for Summary Judgment.

## IV. Conclusion

ACCORDINGLY, the Court **GRANTS** the Government's Motion for Summary Judgment [14], **ORDERS** that the Defendant Vehicle be forfeited to the Government, and **DIRECTS** the Clerk to enter judgment accordingly.

---

7. Notably, Claimant cites no authority in support of his claim that "it is unlawful and unjust for the [Defendant Vehicle] to be seized for forfeiture" because Claimant's conviction allegedly is not yet final. (Claimant's Br. Resp. Gov't Mot. Summ. J. at 15.) The Court is not inclined to conduct Claimant's research for him.