**U.S. VINYL MANUFACTURING COR-PORATION, Plaintiff/Counter–Defendant,**

v.

**COLOUR & DESIGN, INC., Defendant/Counter–Plaintiff.**

Civil Action No. 4:12–CV–00217–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Signed Sept. 26, 2013.

Bobby Lee Cook, Christopher Sutton Connelly, Cook & Connelly, Summerville, GA, Jeffrey Garrett Granillo, Richard W. Bethea, Jr., Chambliss Bahner & Stophel,

P.C., Chattanooga, TN, for Plaintiff/Counter–Defendant.

Chiaman Wang, Craig Edward Bertschi, Andrew David Head, Jeffrey H. Fisher, William Andrew Pequignot, Kilpatrick Townsend & Stockton, LLP, Atlanta, GA, Marc Lieberstein, Kilpatrick Stockton, LLP, New York, NY, for Defendant/Counter–Plaintiff.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Plaintiff/Counter–Defendant's ("Plaintiff") Motion for Partial Summary Judgment [70].

## I.  Background

### A.  Procedural Background

On August 16, 2012, Plaintiff filed a Complaint in the Superior Court of Walker County, Georgia. (Docket Entry No. 1 (Compl.) at 1.) Plaintiff alleged various claims: breach of contract (*id.* ¶¶ 32–35); tortious breach of fiduciary duty (*id.* ¶¶ 36–39); and constructive fraud (*id.* ¶¶ 40–45); Plaintiff also sought punitive damages (*id.* ¶¶ 46–48). Regarding its constructive fraud claim, Plaintiff asked the Court to "equitably enjoin Defendant from enforcing any copyright royalties against [Plaintiff] related to any [P]atterns produced by [Defendant] under the [Contract] for [Plaintiff]." (Compl. at 15; *see also* Compl. ¶ 45.) On September 17, 2012, Defendant removed the Complaint to this Court, citing the Court's federal question jurisdiction. (Docket Entry No. 1 at 3.)

On September 24, 2012, Defendant filed its Answer to the Complaint as well as its Counterclaims. (Docket Entry No. 3.) Defendant sought relief for several claims: copyright infringement (Counterclaim (Docket Entry No. 3) ¶¶ 48–57); trademark infringement (*id.* ¶¶ 58–64); breach of contract (*id.* ¶¶ 65–68); and conversion

(*id.* ¶¶ 71–75). Defendant also sought an accounting for amounts due under the Contract (*id.* ¶¶ 69–70) and asked the Court to preliminarily and permanently enjoin Plaintiff, and its associated parties and entities, from, among other things, "reproducing, displaying, distributing copies of, preparing derivative works based upon, selling or otherwise using [the Patterns] or any other design substantially similar to any design in which Defendants hold the copyright." (Answer and Counterclaims at 33–34.)

In Plaintiff's Answer to Defendant's Counterclaim, Plaintiff first asserted full ownership of the copyright for SATO. (Docket Entry No. 5 ¶ 25.) On November 5, 2012, Defendant responded, asserting its own rights in the SATO pattern, and filed its own Counterclaim, requesting that Plaintiff account to Defendant for profits earned from the SATO pattern. (Docket Entry No. 17 ¶¶ 6–9.) Plaintiff filed its Answer to that Counterclaim on July 22, 2012. (Docket Entry No. 22.)

On January 22, 2013, Plaintiff filed a Motion to Dismiss Defendant's copyright infringement Counterclaim. (Docket Entry No. 31.) Defendant in turn filed a Motion for Judgment on the Pleadings, asking the Court to dismiss Plaintiff's constructive fraud claim. (Docket Entry No. 34.) On March 25, 2013, the Court granted Plaintiff's Motion to Dismiss and dismissed without prejudice Defendant's copyright infringement counterclaim. (Order of Mar. 25, 2013 (Docket Entry No. 39) at 73.) The Court also granted Defendant's Motion for Judgment on the Pleadings and dismissed without prejudice Plaintiff's constructive fraud claim. (*Id.*)

On May 24, 2013, Plaintiff submitted a Motion to Amend (Docket Entry No. 46) and Motion to Deposit (Docket Entry No. 45). On August 5, 2013, the Court granted

Plaintiff's Motion to Amend and Motion to Deposit. (Order of Aug. 5, 2013 (Docket Entry No. 65)). In that Order, the Court directed Plaintiff, within thirty days, to deposit ten percent of Plaintiffs customer invoiced price on all the Patterns, including the SATO pattern[1], that Plaintiff sold from March 31, 2012, to the date of that Order; the Court further directed Plaintiff to deposit, on a monthly basis until the conclusion of this case (or any supervening Order), ten percent of its customer invoiced price on all the Patterns that Plaintiff sells. (*Id.*)

On August 20, 2013, Plaintiff filed a Motion for Partial Summary Judgment, asking the Court to make a final determination that it, not Defendant, owned the SATO pattern. (Docket Entry No. 72.) The next day, Plaintiff filed a Motion asking the Court to expedite the briefing schedule related to its Motion for Partial Summary Judgment. (Docket Entry No. 75.) The Court ordered Defendant to respond to the Motion to Expedite in an expedited fashion (Order of Aug. 21, 2013 (Docket Entry No. 76)), which Defendant did. (Docket Entry No. 77.)

The Court granted Plaintiff's Motion to Support Expedited Briefing Schedule on August 26, 2013. (Order of August 26, 2013 (Docket Entry No. 79).) Additionally, the Court modified the deposit Order to exclude income produced by the SATO pattern until that issue could be further resolved (*Id.*) Pursuant to that Expedited Briefing Schedule, Defendant filed a Response to Plaintiff's Motion for Partial Summary Judgment on September 6, 2013 (Docket Entry No. 82), and Plaintiff filed its reply on September 17, 2013. (Docket Entry No. 104.)

The Court therefore finds that the briefing process is complete and that the instant Motion is ripe for resolution.

## B. Factual Background

### 1. Initial Matters

The Local Rules constrict the facts on which the Court may rely in ruling on Motions for Summary Judgment. *See* N.D. Ga. R. 56.

In support of the Motion for Partial Summary Judgment, Plaintiff filed a Statement of Undisputed Material Facts ("PSMF"), as required by the Local Rules. (Docket Entry No. 74; N.D. Ga. R. 56.1 B(1) ("A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact.").) The Local Rules preclude the Court from considering any statement therein that is "(a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts." N.D. Ga. R. 56.1B(1).

Defendant submitted a response ("DRPSMF") as required by the Local Rules. (Docket Entry No. 86; N.D. Ga.

---

**1.** Regarding this Pattern, the Court noted:

The Parties dispute mightily who, in fact, owns the SATO pattern.... [T]he Court declines to resolve this fact-intensive dispute for purposes of the instant Order and merely accepts the [fact contention that Defendant designed the SATO pattern and licensed it to Plaintiff to use, pursuant to the Parties' contract]; however, the Court recognizes that this fact is disputed.

(*Id.* at 8 n. 5.)

R. 56.1B(2)(a)[2].) Along with their response, Defendant filed a Statement of Additional Material Facts ("DSAMF") as permitted by the Local Rules. (Docket Entry No. 87; N.D. Ga. R. 56.1B(2)(b)[3].) Plaintiff then filed a Response to DSAMF ("PRDSAMF") as required by the Local Rules. (Docket Entry No. 105; N.D. Ga. R. 56.1B(3)[4].)

The United States Court of Appeals for the Eleventh Circuit has observed: "Local Rule 56.1 protects judicial resources by 'mak[ing] the parties organize the evidence rather than leaving the burden upon the district judge.'" *Reese v. Herbert,* 527 F.3d 1253, 1268 (11th Cir.2008) (alteration in original) (quoting *Alsina–Ortiz v. La-boy,* 400 F.3d 77, 80 (1st Cir.2005)). Local Rule 56.1 "also streamlines the resolution of summary judgment motions by 'focus[ing] the district court's attention on what is, and what is not, genuinely controverted.'" *Id.* (alteration in original) (quoting *Mariani–Colon v. Dep't of Homeland Sec.,* 511 F.3d 216, 219 (1st Cir.2007)).

Here, both parties have complied with the Local Rules, and dispute many factual issues. Therefore, where an issue is. in dispute, the Court will turn to the record, keeping in mind that when resolving summary judgment motions, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.[5] *Optimum Techs.,*

---

2. That Rule states, in relevant part:
   A respondent to a summary judgment motion shall include the following documents with the response brief;
   a. A response to the movant's statement of undisputed facts.
   (1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.
   (2) This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B.(1).
   (3) The court will deem the movant's citations supportive of its facts unless the respondent specifically informs the court to the contrary in the response.
   (4) The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Fed.R.Civ. P.56(f).
   N.D. Ga.R. 56.1B(2)(a).
3. That Rule states, in relevant part:
   A respondent to a summary judgment motion shall include the following documents with the response brief:

   b. A statement of additional facts which the respondent contends are material and present a genuine issue for trial. Such separate statement of material facts must meet the requirements set out in LR 56.1 B.(1).
   N.D. Ga.R. 56.1B(2)(b).

4. That Rule states, in relevant part;

   If respondent provides a statement of additional material facts, then, within the time allowed for filing a reply, the movant shall file a response to each of the respondent's facts. The range of acceptable responses is limited to: (a) an objection to the admissibility of the evidence upon which the respondent relies, (b) an objection pointing out that the respondent's evidence does not support the respondent's fact; (c) an objection on the ground that the respondent's fact is not material or does not otherwise comply with the provisions set out in LR 56.1 B.(1), and (d) a concession that the court can properly consider the respondent's evidence for purposes of the summary judgment motion.

5. Defendant responds to several of Plaintiffs Statements of Undisputed Facts by stating that "[Defendant] has not yet had an opportunity to take Mr. Carstensen's deposition, or any depositions of [Plaintiff]'s personnel in this case. Thus, [Defendant] is not in possession of any evidence that contradicts this statement, but cannot admit it either." *See* DRPSMF ¶ 2. The Court acknowledges this

*Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1241 (11th Cir.2007). This statement does not represent actual findings of fact. *In re Celotex Corp.,* 487 F.3d 1320, 1328 (11th Cir.2007). Instead, the Court has provided this statement simply to place the Court's legal analysis in the context of this particular case.

### 2. The Parties

Plaintiff, a Texas corporation with its principal place of business in Lafayette, Georgia, is a leading developer, manufacturer, and distributor of vinyl wallcovering products. (Compl. ¶ 1; Counterclaim ¶ 2.) Prior to May 2010, Plaintiff manufactured and directly sold vinyl wallcovering products to several major hospitality brands. (Compl. ¶ 6.) It is one of the largest manufacturers of vinyl wallcovering for the hospitality industry. (Counterclaim ¶ 12.) Plaintiff offered a selection of copyrighted patterns to customers from its own portfolio; however, its offerings were limited. (*Id.*) To sell its products, Plaintiff employed a team of sales representatives and also used independent sales representatives. (*Id.* ¶ 7.)

Defendant, a Delaware corporation with its principal place of business in North Little Rock, Arkansas, is in the business of designing, developing, and selling vinyl wallcovering and related products. (Compl. ¶ 2; Counterclaim ¶ 1.) Defendant creates designs for wallcovering and markets that wallcovering to, among others, hospitality and property management industries, and governmental and educational entities. (Counterclaim ¶ 10.) Defendant's wallcovering designs and patterns are protected by U.S. copyright laws. (*Id.* ¶ 11.)

issue, however, for the purposes of the instant Motion only, will deem such statements that

### 3. The Contract

On April 15, 2010, Plaintiff and Defendant entered into a written contract (the "Contract") under which Defendant agreed to develop, design, and market wallcovering patterns (the "Patterns") that Plaintiff then would manufacture. (Compl. ¶ 11; Counterclaim ¶¶ 13–14 and Exh. 1.) The Contract initially was scheduled to last five years. (*Id.; Id.*)

The Contract provided that Defendant would market the Patterns produced thereunder, with Plaintiff contributing money during the first year. (Compl. ¶ 11; Counterclaim ¶ 18 and Exh. 1 ¶ 13(b).) The Contract also provided that Defendant would own the intellectual property rights to the Patterns that it designed; Plaintiff would have an exclusive license to manufacture, market, and sell those Patterns royalty-free while the Contract was effective; it could do so at a ten percent royalty rate post-termination. (Counterclaim ¶ 20 and Ex. 1 ¶ 5(c).) The specific portion of the Contract governing copyright and royalties states:

> [Defendant] will own the copyright to the [Plaintiff] [P]atterns it develops pursuant to this Agreement and hereby grants to [Plaintiff] an exclusive license, royalty free in said copyrights to manufacture, market and sell for the life of the Agreement. Upon termination of this Agreement and to continue for the duration of any [Defendant] intellectual property use, [Plaintiff] shall pay [Defendant] ten percent (10%) of the [Plaintiff] customer invoiced price as a royalty on all [Defendant] copyrights.

(*Id.,* Exh. 1 ¶ 5(c).) In addition, pertinent to the instant Motion, the Contract provided:

are not otherwise contradicted by the record admitted.

Presently there are three (3) salaried [Plaintiff] personnel: Barbara Desmond, national sales coordinator; Tara Garwood, Marriott representative and Lawrence Carstenson (sic), designer. [Defendant] agrees to make all practicable efforts to employ the above salaried employees under the same or similar terms and conditions.

(*Id.,* Exh. 1 ¶ 3.)

In April or May 2012, Plaintiff notified Defendant that it was terminating the Contract. (Compl. ¶ 31; Counterclaim ¶ 38.) The Parties complied with the required dispute resolution procedures set forth in the Contract before filing suit. (Compl. ¶ 31; Counterclaim ¶¶ 38–41.)[6]

### 4. The "SATO" Copyright

The motion currently before the Court concerns ownership of the copyright to a wallcovering pattern titled SATO. (Pl.'s Mot. Part. Summ. J. (Docket Entry No. 70).) The SATO pattern was created by Larry Carstensen ("Carstensen") in response to an April 27, 2010, request from Defendant's President and Creative Director Tommy Abshire ("Abshire") during a meeting at Defendant's headquarters in North Little Rock, Arkansas. (PSMF ¶ 6, DRPSMF ¶ 6). The meeting was arranged by Steve McCloud ("McCloud"), Plaintiff's President and CEO, in order that Abshire and Carstensen could "meet and discuss how [Carstensen] fit into [the Contract] in the next two weeks." (Decl. of Tommy Abshire (Docket Entry No. 90) at Exh. 5.)

During that April 27, 2010, meeting, Abshire also provided Carstenson with a sample "grasscloth" pattern to serve as a starting point for the SATO design.

(PSMF ¶ 6, DRPSMF ¶ 6.) The parties dispute the originality and ownership of that sample pattern. *Id.* Over the next three days, Carstenson worked to create the SATO pattern. (PSMF ¶ 11, DRPSMF ¶ 11.) On April 29, 2010, Carstensen had two "proofs" of the pattern overnighted to Abshire, and on April 30, 2010, Carstensen submitted the pattern to Plaintiff's copyright attorneys for approval. (Abshire Decl. at Exh. 7; DSAMF ¶ 16; PRDSAMF ¶ 16.) That same day, at either the "direction" or "suggestion" of Abshire, Carstensen sent SATO to the engraver. (DSAMF ¶ 18, PRDSAMF ¶ 18.)

From April 27, 2010 to April 30, 2010, Carstensen was on Plaintiff's payroll (PSMF ¶ 2, DRPSMF ¶ 2), though Carstensen also received other projects from Abshire during this time period. (*See* Decl. of Andrew Head (Docket Entry No. 89) at Exh. 1 ("I have a new boss who I really like (met with him in Little Rock Tuesday). He is the President of [Defendant]. He really likes my work and gave me three projects to do right away").)

Beginning May 1, 2010, pursuant to the April 15, 2010, Contract discussed *supra,* Carstensen was moved to Defendant's payroll and sometime thereafter began receiving salary and benefits from Defendant. (PSMF ¶ 4, DRPSMF ¶ 4.) After this transfer, certain modifications or additions to the SATO pattern were made at the direction of Abshire, including choosing the colors (DSAMF ¶¶ 25–26; PRDSAMF ¶¶ 25–26), and the name "SATO" (DSAMF ¶ 20; PRDSAMF ¶ 20.) However, parties dispute the relevance of these contributions to the instant Motion. (PRDSAMF ¶ 20.)

---

**6.** Defendant alleges that Plaintiff did not adequately comply with the required dispute resolution procedures. (Counterclaim ¶ 41.) However, because Defendant has not alleged any cause of action stemming from this al-

leged failure and because Defendant does not move for judgment on the pleadings based thereon, any dispute regarding this issue is immaterial to the instant Motion.

Also subsequent to the May 1, 2010, transfer date, Plaintiff identified SATO in statements and marketing materials as one of Defendant's products. (DSAMF ¶ 38–39, 42 PRDSAMF ¶ 38–39, 42.) Finally, as of May 16, 2012, Defendant holds a Certificate of Registration to the copyright for SATO, the validity of which is being challenged. (Head Decl. at Exh. 2.)

## II. Jurisdiction

The Court has jurisdiction over the subject matter of this motion pursuant to 28 U.S.C. §§ 1331 and 1338, as this action contains a copyright claim over which federal district courts possess original and exclusive jurisdiction. The Court also has jurisdiction under the Declaratory Judgment Act. 28 U.S.C. § 2201.

## III. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record. *Reese,* 527 F.3d at 1269 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Allen v. Bd. of Public Educ. for Bibb Cnty.,* 495 F.3d 1306, 1313 (11th Cir.2007).

The precise standard for evaluating a summary judgment motion depends on whether the movant also bears the burden of proof at trial on the relevant issue. "[W]here the moving party has the burden [of proof on the issue, the] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *United States v. One 2007 Toyota FJ Cruiser, VIN JTE-BU11F670023522,* 824 F.Supp.2d 1369, 1376 (N.D.Ga. Nov. 8, 2011) (citations omitted); *see also Johnson v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1243 (11th Cir.2001) ("The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (omission in original) (citation omitted)). By contrast, "[w]hen the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." *One 2007 Toyota FJ Cruiser, VIN JTE-BU11F670023522,* 824 F.Supp.2d at 1376 (internal quotation marks and citation omitted).

Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Allen,* 495 F.3d at 1314. The non-movant must "go beyond the pleadings" and establish these facts "by its own affidavits, or by depositions, answers to interrogatories, and admissions on file." *Id.* (citation and internal quotation marks omitted).

Here, there is a dispute as to where this burden properly lies. (*See* Pl.'s Reply Br. Supp. Mot. Part. Summ. J. (Docket Entry No. 104) at 6.) Specifically, the parties focus on the effect that Defendant's Copyright Registration has on the burden. *Id.* Plaintiff validly argues that the presumption associated with a Certificate of Registration can be shifted through the introduction of "evidence in the record [which] casts doubt" on the copyright's validity. *Durham Industries v. Tomy*

*Corp.,* 630 F.2d 905, 908 (2d Cir.1980). And, if Plaintiff was merely arguing that Defendant's inability to prove ownership of SATO negates Defendant's infringement claim, Plaintiff's proposed placement of the burden would be correct. However, Plaintiff is requesting more than that. It is asking the Court "to find as a matter of law that [Plaintiff] owns the pattern identified as 'SATO.'" (Pl.'s Br. Supp. Mot. Summ. J. (Docket Entry No. 74) at 1; Pl.'s Counterclaim (Docket Entry No. 5) ¶ 15 ("[Plaintiff] is entitled to a declaratory judgment that ... [Plaintiff] owns all legal rights in [the SATO pattern] as a work made for hire").) Because Plaintiff requests a Declaratory Judgment as to its ownership of SATO, for the purposes of this Motion, Plaintiff bears the burden to demonstrate such declaration would be appropriate. Therefore, to succeed at the summary judgment stage, Plaintiff must show that "no reasonable trier of fact" could find that Plaintiff does not own the SATO pattern. *One 2007 Toyota FJ Cruiser, VIN JTEBU11F670023522,* 824 F.Supp.2d at 1376.

For the reasons set out below, the Court finds that Plaintiff has not met this burden, making summary judgment on the issue of ownership of the SATO Pattern improper at this time.

7. Defendant correctly points out that there are other issues relevant to SATO's ownership, such as issues of joint ownership, or whether ownership of SATO was transferred under the Contract. (Def.'s Resp. Pl.'s Mot. Summ. J. (Docket Entry No. 82) at 19–20.) However, the Court finds the issue at hand—Carstensen's "employment" from April 27, 2010 to April 30, 2010—is sufficiently uncertain to preclude summary judgment on the ownership issue regardless of the other arguments Plaintiff could have put forth.

8. An alternative definition of "work made for hire" under the Copyright Act is:

## B. Application

██ The core of the instant dispute focuses on the issue of Carstensen's employment for the purposes of § 201 of the United States Copyright Act ("Copyright Act"). (Br. Supp. Mot. Part. Summ. J. at 9.) [7] Plaintiff claims ownership of the SATO pattern through § 201(b) of the Copyright Act, which states:

In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b). The Copyright Act further defines "work made for hire" as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101.[8]

Here, it is undisputed that designing SATO was in the scope of Carstensen's employment. (Def.'s Resp. Pl.'s Mot. Part. Summ. J. at 9.) Additionally, neither party disputes that Carstensen is an "employee" within the meaning of the Copyright Act. (Pl.'s Br. Supp. Mot. Part. Summ. J. at 9–11; (Def.'s Resp. Pl.'s Mot. Part. Summ. J. at 9).) However, both parties disagree fervently over who employed Carstensen within the meaning of the Copyright Act

a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. However, neither party claims ownership through this provision, and the Court will not address it.

for the purposes of his work SATO. (*Id.*; *Id.*).

Though it took some spurring from Defendant, both parties now center their argument around the United States Supreme Court's decision in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). (Def.'s Resp. Pl.'s Mot. Part. Summ. J. at 7; Pl.'s Reply Supp. Mot. Part. Summ. J. at 8.) In that case, the Supreme Court held that the determination of whether an individual was an "employee" for the purposes of the "work made for hire" doctrine of § 101 of the Copyright Act should be based on "principles of general common law of agency." *Reid*, 490 U.S. at 751, 109 S.Ct. 2166.

In *Reid*, the dispute was over the ownership of a sculpture that the defendant, Mr. Reid, had created for the plaintiff, Community for Creative Non–Violence ("CCNV"). Mr. Reid contended that he had been retained as an independent contractor and was the proper holder of the copyright to his work of art. CCNV, on the other hand, contended that Mr. Reid was an "employee" within the meaning of the Copyright Act's "work made for hire" doctrine, making CCNV the legal copyright holder. *Id.* at 736–37, 109 S.Ct. 2166. In the calculation of the Supreme Court,

"using principles of general common law of agency" meant weighing the "nonexhaustive list of factors" presented in the Restatement (2d) of Agency § 220(2).[9] *Id.* at 751–52, 109 S.Ct. 2166. After working through these factors, the unanimous opinion of the Court held that Mr. Reid was indeed an "independent contractor," and therefore owned the rights to the sculpture. *Id.* at 753, 109 S.Ct. 2166.

While both parties have cited an array of cases expertly applying the *Reid* factors to one result or another, their relevance to the issue at hand is questionable. *See JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th Cir.2010) (Finding defendant software developer was an employee and therefore plaintiff business was the owner of a disputed computer program); *Kirk v. Harter*, 188 F.3d 1005 (8th Cir.1999) (Concluding that defendant software developer was an independent contractor and therefore owner of disputed computer program he developed for plaintiff business); *M.G.B Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir.1990) (Barring plaintiff homebuilder's copyright infringement claim against competitor over floor plan after determining that plan was drafted by an independent contractor and plaintiff had no rights to it). Unlike these cases,

9. That section states:
  (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
  (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
  (b) whether or not the one employed is engaged in a distinct occupation or business;
  (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
  (d) the skill required in the particular occupation;
  (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
  (f) the length of time for which the person is employed;
  (g) the method of payment, whether by the time or by the job;
  (h) whether or not the work is a part of the regular business of the employer;
  (i) whether or not the parties believe they are creating the relation of master and servant; and
  (j) whether the principal is or is not in business.
  Restatement (2d) Agency § 220(2).

where the question was one of independent contractor or employee, the issue here is whether Carstensen was an employee of Plaintiff or an employee of Defendant. No party has cited, nor has the Court been able to find, a binding opinion directly addressing this question within the context of the Copyright Act.

One case that somewhat mirrors the current issue is *Favela v. Fritz Companies, Inc.*, No. CV–92–2450, 1993 WL 651875 (C.D.Cal. Sept. 20, 1993). There, the question was whether the plaintiff, Favela, who had created a software program to assist the defendant Fritz Companies' business, was an employee of Fritz Companies or the temporary employment agency through which the Fritz Companies acquired Favela's services. Unlike the case at hand, Favela involved a dispute between an employee and employer, as the temporary employment agency was not a party to the suit. However, the reasoning behind its holding is still instructive.

The *Favela* opinion starts with the premise from *Reid* that the "general common law of agency" controls. *Id.* at *4 (citations omitted). However, rather than turning to a formulaic application of the servant-master doctrine espoused in *Reid* and the Restatement (2d) of Agency § 220, the *Favela* court applied the "loaned servant doctrine" appearing in Restatement (2d) of Agency § 227. *Id.* at *5.[10] The *Favela* court concluded that "[plaintiff] was an employee of both [the temporary

employment agency] and [defendant] at the time the computer software programs were created." *Id.* at *6.

*Langfitt v. Federal Marine Terminals, Inc.*, 647 F.3d 1116 (11th Cir.2011) provides more detailed application of the "borrowed servant doctrine" as used in the Eleventh Circuit. In that case, Langfitt, a full-time employee of a labor broker, sued Federal Marine Terminals ("FMT"), a company operating longshoring facilities, for injuries he sustained while working on FMT's behalf. FMT responded by claiming it was Langfitt's employer at the time of the injury, and was therefore protected under the Longshore and Harbor Worker's Compensation Act.

The Eleventh Circuit turned to the "borrowed servant doctrine" to determine whether Langfitt was an employee of FMT or the labor broker. *Id.* at 1123. The court described the doctrine as follows:

[T]he same considerations relevant in determining whether a person was an employee, as opposed to an independent contractor, guide the borrowed-servant inquiry. The only distinction, however, is that the focus is now on the relationship between the two principals—i.e., the potential employers-and which of them had the right of control, rather than on the relationship of the principal and agent, as it is in the employee-independent contractor context. Probative considerations of the borrowing principal's right to control might there-

---

**10.** Restatement § 227 to some extent incorporates the factors used in § 220, though there is increased focus on what work the employee has been "directed" or "permitted" to do. It states:

> A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

Restatement (2d) of Agency § 227.
Comment (c) states:

> Factors to be Considered. Many of the factors stated in Section 220 which determine that a person is a servant are also useful in determining whether the lent servant has become the servant of the borrowing employer.

*Id.* at Comment (c).

fore include: (1) direct evidence that the general employer expressly transferred control to the borrowing principal or that the borrowing principal exercised control; (2) evidence that the borrowing principal was responsible for paying the employee; (3) evidence that the borrowing principal furnished equipment necessary for performance of the work; and (4) evidence that the borrowing principal had the right to terminate its relationship with the employee. *Id.* at 1123. It should also be noted that, "[w]hile ... the existence of a borrowed-servant relationship is a question of law, the determination of the question is heavily fact based." *Hayden v. Broward County,* No. 12–62278, 2013 WL 4786486, at *14 (S.D.Fla. Sept. 6, 2013).

As discussed below, applying the borrowed servant doctrine to the case at hand, and viewing the facts in the light most favorable to Defendant, a reasonable trier of fact could find that Defendant was Cartensen's employer. *Langfitt,* 647 F.3d at 1123.

The first factor to consider under the borrowed servant doctrine, as well as the *Reid* test, is control. *Langfitt,* 647 F.3d at 1123 (considering "evidence that the general employer expressly transferred control to the borrowing principal or that the borrowing principal exercised control"); *see also, M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1491 (11th Cir.1990) ("According to the Supreme Court [in *Reid* ], under the general law of agency, we look to the hiring party's right to control the way in which the product ... is made in order to determine if the hired party is an employee."). The beginning of Carstensen's relationship with Abshire is probative of this issue.

On April 18, 2010, McCloud introduced Carstensen to Abshire through an email that stated in part:

I have made an agreement with [Defendant] in Little Rock to work with [Plaintiff] in developing our designs, programs, sales and marketing, etc. These functions will be moving to Little Rock effective May 1. Tommy Abshire copied on this email is the president of [Defendant]. We would like you to travel to Little Rock so you and he can meet and discuss how you fit into this.

(Abshire Decl. at Exh. 5.) Carstensen came to Little Rock to meet with Abshire on April 27, 2010, twelve days after the Contract was executed and just four days before Carstensen was to be officially hired pursuant to ¶ 3 discussed *supra.* (PSMF ¶ 6; DRPSMF ¶ 6.)

At that meeting, "Mr. Carstensen was asked by Tommy Abshire ... to design a wallcovering pattern." (PSMF ¶ 6.) Abshire also gave Carstensen a sample "grasscloth" wallcovering pattern to serve as inspiration. (*Id.*) Though the parties dispute the originality of this sample pattern (*see* DRPSMF ¶ 6), this disagreement does not change the fact that Abshire directed Carstenson to make a pattern similar to it. Further demonstrating Abshire's control over Carstensen at the time SATO was created, Carstensen wrote to friends and family on April 28, 2010, "[Abshire] really likes my work and he gave me three assignments to do right away." (Head Decl. at Exh. 1.)

Plaintiff attacks the idea that Defendant, primarily through Abshire, controlled the creative process behind the SATO pattern. (Pl.'s Reply. Supp. Mot. Part. Summ. J. at 11.) Plaintiff points to the "discretion" that Carstensen exercised in designing SATO and the "freedom" which he possessed during the design phase. (*Id.*) However, the freedom with which Carstensen worked is not at issue here, as he is not claiming any rights in the SATO pattern himself. The dispute is between

Plaintiff and Defendant, and though Plaintiff attacks the level of control Defendant had over the creative process behind SATO, it has failed to demonstrate that it played any more of a role in SATO's creation itself.

The core of Plaintiff's argument focuses on the fact that Carstensen "actively received a salary from [Plaintiff]" and "received insurance benefits from Plaintiff". (Pl.'s Reply Supp. Mot. Summ. J at 1.) Plaintiff places particular importance on this factor in its reply brief, quoting, though not directly citing, the opinion in *Aymes v. Bonelli*, 980 F.2d 857 (2d Cir. 1992). (*Id.* at 8.) Decided in 1992, three years after the holding in *Reid* was published, Aymes states that "every case since *Reid* that has applied the [common law agency] test has found the hired party *to be an independent contractor* where the hiring party failed to extend benefits or pay social security taxes." *Id.* at 863 (emphasis added). Plaintiff may be right correct that failure to pay benefits and employment taxes is "sufficient as a matter of law [to] grant summary judgment" when an employee is suing an employer to gain rights to a work the employee created, but that is not the issue here. (Pl.'s Reply Supp. Mot. Part. Summ. J. at 9.)

Still, the Court does not dispute that the salary paid to Carstensen by Plaintiff is an important indicator of his status as Plaintiff's "employee." *See Langfitt*, 647 F.3d at 1123. ("Probative considerations ... might therefore include ... evidence that the borrowing principal was responsible for paying the employee.") That fact, standing alone, is not sufficient to command summary judgment on its own in this case. *See Reid*, 490 U.S. at 752, 109 S.Ct. 2166 ("No one of these factors is determinative"). Additionally, some evidence potentially favors Defendant on this point. First, Carstensen was to be official-ly transferred over to Defendant's payroll only four days after he began work on SATO, and Carstensen was aware of this plan during the time he worked on the SATO pattern. (Abshire Deck at Exh. 5.) Second, Defendant paid Carstensen a bonus for his work on SATO. (Supl. Decl. of Tommy Abshire (Docket Entry No. 96) ¶ 4.)

Plaintiff also emphasizes that Carstensen "worked in his home office, which was furnished with [Plaintiff's] office equipment, including the computers and design programs he used to create SATO." (Pl.'s Reply Supp. Mot. Part. Summ. J. at 1.) Once again, while the Court does find this probative of the employment issue, particularly as evidence that Plaintiff "furnished equipment necessary for performance of the work," it does not rise to the level of requiring judgment as a matter of law. *Langfitt*, 647 F.3d at 1123. Further, other evidence supports Defendant's position, namely that Abshire gave Carstensen the sample pattern to work from. (PSMF ¶ 6; DRPSMF ¶ 6.) Though Plaintiff disputes the issue, Abshire testified that Defendant owned the sample pattern. (DRPSMF ¶ 6; Abshire Decl. ¶ 12.)

As far as whether "the borrowing principal had the right to terminate its relationship with the employee," it appears that Defendant could have rejected the work Carstensen sent to Abshire on April 29, 2010, and ceased to do business with him. *Langfitt*, 647 F.3d at 1123. If that had occurred, the SATO pattern may not exist today. On March 28, 2010, before Abshire and Carstensen were ever introduced, McCloud emailed to Abshire, "[m]y suggestion to you is that [Carstensen] will be an asset at the beginning of our agreement ... [w]hether he will provide anything to you long term is of course a decision you will need to make." (Abshire Decl. at Exh. 3.) This statement supports the prop-

osition that Plaintiff "permitted" Defendant to use Carstensen to create SATO. Restatement (2d) of Agency § 227.

Finally, though it does not fit neatly into any specific "factor" illuminated by *Reid* or *Langfitt,* the Court considers it important that, up until the instant lawsuit, Plaintiff had acquiesced in, and even promoted, Defendant's ownership of the SATO pattern. *See* Restatement (2d) of Agency § 220(2) ("the following matters of fact, *among others,* are considered") (emphasis added); *Aymes,* 980 F.2d at 861 ("We begin our analysis by noting that the *Reid* test can be easily misapplied, since it consists merely of a list of possible considerations that may or may not be relevant in a given case").

On May 12, 2010, McCloud emailed Abshire in reference to SATO, "I have seen both the patterns that you have Larry here working on." (Abshire Decl. at Exh. 11). On June 11, 2010, McCloud referred to "the new SATO Tommy finished." (*Id.*) Finally, on marketing samples that Plaintiff printed and distributed, Plaintiff included the description, "A Color and Design Studios Product. Copyright (c) 2010." (*Id.* at Exh. 17.) Contrastingly, Abshire maintained Defendant's ownership of SATO from early on in its existence without being challenged by Plaintiff. Indeed, a June 22, 2010, email from Abshire to Carstensen stated that, "[t]his pattern, SATO, is the intellectual property of Colour & Design, Inc." (*Id.* at Exh. 12.)

For the reasons discussed above, the evidence does not demand a finding that Carstensen was Plaintiffs employee. The Court therefore finds that a genuine dispute remains concerning whether Plaintiff or Defendant owns the SATO pattern.

The Court consequently denies Plaintiffs Motion for Partial Summary Judgment.

## IV. Conclusion

ACCORDINGLY, the Court **DENIES** Plaintiff/Counter–Defendant's Motion For Partial Summary Judgment [70]. The Court **DIRECTS** the Clerk to **MODIFY** the Court's August 5, 2013, Order regarding Plaintiff's Motion to Deposit to once again require Plaintiff to deposit *ten percent* of Plaintiff's customer invoiced price of the SATO Pattern with the Court.

The Court **DIRECTS** Plaintiff, *within 30 days,* to deposit *ten percent* of Plaintiff's customer invoiced price on the SATO Pattern that Plaintiff sold from March 31, 2012, to the date of this Order. Going forward, the Court **DIRECTS** Plaintiff to deposit, on a *monthly* basis until the conclusion of this case (or any supervening Court order), ten percent of Plaintiffs customer invoice price on the SATO Pattern that Plaintiff sells, along with all other Patterns Sold.[11]

As before, the Court **DIRECTS** the Clerk of Court to deposit the deposited funds into the Registry of the Court as soon as the business of the office allows. The Clerk shall deposit the funds into an interest-bearing account, and the funds shall remain on deposit until further Court Order.

IT IS SO ORDERED.

---

11. Therefore, for purposes of this Order, the Patterns comprise; AKIO, AMAY, ANNIKA, ANNIKA OGEE, ANNIKA SILK, ANNIKA VIGNE, DERVISH, DERVISH TEXTURE, KIA, KIA STRIPE, PANGIA, QUITO, RACHA, REVA, SATO, TESSA, and TESSA SILK.